King, J.
This is an action begun in the court of common pleas November 25, 1896, to enjoin the ' defendant, The Toledo Traction Company, who is,at the time of this trial, the successor of the other defendants by virtue of consolidations and otherwise, from interfering to obstruct and stop certain of its cars about to be run over the tracks of the defendant in the city of Toledo.
The petition alleges, that on June 1st, 1894, the plaintiff entered into a contra'ct with the defendant, whereby it acquired a right-to .run its cars over the tracks of the defendant in the city of Toledo therein described, .and sets forth in its petition the contract in full. The answer denies so much of the petition as alleges that the defendant is wrongfully stopping the cars, and alleges that the plaintiff had no right to run the cars in question over its track in pursuance of the contract described in the petition, or otherwise.
It appears from the pleadings and from the evidence, that in 1894, the plaintiff, an incorporation, was about to build and construct a railroad which should run along, near or adjacent to the Maumee river, on either side of it, and *191 should run from the line of the corporation of the city of Toledo, on the west side of the river, to and through the village of Maumee, crossing the Maumee river near the village of Maumee, and running on the easterly side of the Maumee river to the corporation line of the city of Toledo, connecting at both of these points with certain lines of the defendant, and so wbeAcompleted there would be,pursuant to this contract, a complete belt line constructed and running through the city of Toledo, and on either bank of the river, and through the villages of Maumee on the western side of the river, and Perrysburg on the eastern side of the river. The road was constructed as proposed in this contract, and the parties to this case and to that contract entered into carrying out the provisions of it, and continued to carry them out for a period of time, perhaps a year and a half or two years, when, after the construction of the plaintiff’s road, and while the parties were in the execution of this contract according to its provisions and terms, about April, 1896, a corporation, called The Toledo, Bowling Green A Fremont Railway Company was chartered,and constructed, or was then about to construct,a railway from the village of Perrysburg to Bowling Green, some ten miles further south from Toledo than Perrysburg is situated, and proposed to connect it with the road of the plaintiff; and thereupon it entered into a contract with plaintiff in most of its terms substantially like that entered into between the plaintiff and the defendant in respect to running cars over its tracks. The road was constructed as proposed to Bowling Green, and the Toledo, Bowling Green & Fremont Railway Company entered upon the business of running cars over its tracks, and also entered into .carrying out the provisions of its contract with the plaintiff, whereby certain cars which ran over the road of the Bowling Green & Fremont Railway Company,also ran continuously from the point where that road connected with the plaintiff’s road,over the tracks *192 of the plaintiff’s road, to the city of Toledo, and then ran over the tracks of the defendant’s road, making the circuit that had been contemplated by the contract between the plaintiff and the defendant. That running arrangement was carried on for some months, when the defendant interfered to stop certain of these cars, and did stop them, and this action is begun to enjoin those acts — to enjoin the defendant from obstructing the running of these cars over its road. The arrangement between the Bowling Green road and plaintiff in this case, for running cars, is set forth at some length in its contract, which was offered in evidence, and the arrangements there stipulated for, have, in some respects, been changed between those parties by their subsequent conduct, or by subsequent oral agreements between them, so that, at the time when this action was commenced and when the defendant interposed these obstructions to running the cars, the facts were substantially these: The plaintiff company furnished three of its own cars which had, up to that time been ordinarily used upon its own tracks and in its own business, to be run over the line of the Bowling Green road, from Perrysburg to Bowling Green and return, as well as over the line of its own road; and as actually operated-, they were run from the village of Perrysburg to and through Toledo and back, and thence to Bowling Green and return to the village of Maumee, and from the village of Maumee down its tracks to and through Toledo, making the same complete circuit stipulated for in the contract between these parties. The plaintiff road, up to the time it made this actual running arrangement with the Bowling Green road, had been running five cars upon its own road. When it made this arrangement, it took three of those cars and extended the distance that they were to travel in the manner that I have described. It added no more cars to its own line, and five cars were continued to be run over its line, two of them exclusively upon its line and *193 the line of the defendant, and three of them upon the lines of the defendant and the line of the plaintiff, and the line of the Bowling Green road. I might say that the real purpose of that arrangement, so far as it can be obtained from the proof, was to obviate the necessity of a transfer of passengers at the village of Perrysburg from the Bowling Green line to the plaintiff’s line.
The written contract between the plaintiff and the Bowling Green road provides, among other things, in paragraph 2, following the preamble:
“Second party (Bowling Green road) shall furnish at its own expense and cost the power to propel and the men and labor to operate its cars over that portion of said road to be constructed by it, and it shall further pay to first party a sum sufficient to reimburse it for .all moneys paid out or expended by first party in furnishing the necessary men and labor to run and operate the cars of second party over the entire distance along and around said railway of first party.”
Again, in paragraph 4, is this provision:
“Second party shall deliver to first party and first party shall receive from second party, all cars of second party at the point where the said railway intersects the westerly line of West Boundary street in the village of Perrysburg. Said first party shall take charge of, operate, propel and run all of said cars from said point last above named in a northerly direction along its railway so to be constructed along or near the westerly line of Findlay street to Sixth street. ”
And then follows a description of the line of plaintiff’s road.
So'that contract, it appears, provides that in the interchange of cars and the-running arrangements that were made between them, that when the cars came upon the track of the plaintiff’s road, it was to operate, propel, and run them, and for the expenses of this operation and run *194 ning, the Bowling Green road was in some manner thereafter provided for to'pay the plaintiff road.
There are used in that contract a good many expressions in reference to the Bowling Green road’s property,like “its cars;’’ but, as I have said, the conduct of the parties and their actual arrangements afterwards have so far changed this contract, that at the time when this litigation arose the Bowling Green road was running no cars of its own, but it was simply running the cars of the Maumee road over its railway under this contract with them, and when these cars came upon the track of the plaintiff’s road, the plaintiff was to have charge of them, have complete control over them, and was to operate them. These cars, then, upon the road of the plaintiff, were under its sole management and control.
This contract, which is made the basis of this action, should not and cannot be construed beyond its true intent and meaning; but that meaning, obtained from the document itself, and the whole of it, aided by any extraneous light that the other testimony in the case may throw upon it, should be given to it by the court, and full effect should be given to such meaning when it can be once ascertained. That contract is very long, and provides a great many stipulations covering a variety of things that were anticipated to arise between these two companies, and it sets forth in the first paragraph of the preamble that the plaintiff proposed to build a road over a certain route, and that route is particularly described; but here I notice that from the beginning to the end of this contract, there is no provision or stipulation from which it even could be inferred that either party, at the time of the execution of this contract, contemplated that by its ierms it should restrict the plaintiff from extending its road over any other route that it might thereafter desire to. It proposed to construct over this route, and that route is described, but it certainly is not by its lan *195 guage restrictive upon the plaintiff, either as to the exact line the plaintiff’s road should follow between the points named, nor that the southern, terminus of this road should be at either of the villages named. It is said now, in the third paragraph at the commencement of the contract:
“The parties hereto desire to make a mutual arrangement and agreement, whereby said roads may be connected so that the traffic over the road of second party may pass over the roads of first parties, so as t.o make a continuous circuit or belt line connecting the city of Toledo and the villages of Maumee and Perrysburg, and so that the traffic may be transported between the points named without, change of cars or delays of any kind.’’
Then the object of the parties when they got together,, was to make a contract by which all the traffic carried over the road of the Maumee company might be carried without change of cars when it should reach the line of defendant’s road. That was between the city of Toledo and the villages of Maumee and Perrysburg; but what effect has the placing in there of the villages of Maumee and Perrysburg, further than that they were points then contemplated where the road was to stop at the southern end? Had the parties at the time contemplated building a road, not to Maumee and Perrysburg, but to Napoleon or Bowling Green, there is nothing in the contract to show that the same provisions-would not have been inserted with reference to traffic arrangements. It is true that there is nothing in any of the provisions that I have or shall hereafter refer to, that the defendant is bound to carry the independent distinct traffic of any other railroad. This paragraph is referred to as having some bearing:
“Second party shall deliver to said first parties, and the first party shall receive from second party, all cars running over the road of second party at the southerly line of the *196 city of Toledo, at the respective points on the east and west sides of the Maumee river above indicated,”
Then there follows the provisions as to fares, which are immaterial here. There is this further provision:
‘‘Second party shall forever indemnify and hold and save harmless said first parties, and each of them, from all liabilities, damages, costs, or expense, caused by the negligence or the wrongful acts of the employes of second party, in ■operating its cars over and along the tracks of the first parties, it being understood and agreed that the conductors, motormen and other servants and employes of second party, are not to be held or construed in any event or in any respect to be the agents, servants, or employes in any manner or form of said first parties, or either üf them.”
I refer to that for the purpose of distinguishing it from any provision there is in the other contract. There is no like provision in the contract with the Bowling Green road; on the contrary, the provision in that contract is, that the plaintiff’s road is to operate the cars that it receives from the Bowling Green road, and that the Bowling Green road is to pay it the expense of such operation. If that were carried out in accordance with the plain language and expressed intent and purpose of it, the plaintiff company would be responsible for the acts of negligence of the conductors and motormen upon the cars that it received from the Bowling Green road while they were running over its road. Whether it might fall back eventually upon the Bowling Green road is another matter, but this responsibility it assumes by its contract. By the contract said plaintiff is made •responsible for the running of its cars when they get into the city of Toledo. It there contracts with the defendant company that it will indemnify it against any liability or any loss that it may sustain by reason of any acts of its employes, etc.
We think that the only question now submitted to us is whether the defendant should be enjoined from obstructing *197 the three oars which the proof shows were being run, not only over the plaintiff’s road, but over the Bowling Green road as well. We do not see fit, nor do we think it is important, to discuss or to decide upon any case or state of facts which are not before us. We seek only to ascertain if there has been such a substantial violation of the contract between these parties by the plaintiff, as authorized the defendant to stop these three cars under the circumstances described. The defendants here claim, not that it should not carry the passengers or traffic brought into the city over the defendant’s road from Bowling Green or from the Bowling Green road, but that it should not be required to allow the cars to run over the plaintiff’s road and under the plaintiff’s direction and authority, that have also been allowed to run over the Bowling Green road, to come into the city and run over defendant’s road,and use its power; that is to say, these three cars that have not only been used upon the plaintiff’s road to accomodate its traffic' — 'Carrying passengers that come upon the cars along its line — but also used to go beyond the limits of plaintiff’s road, and to carry traffic and passengers that came from points further away may be stopped. If these passengers and this traffic came from these further points by any means possible, and at Perrysburg or Maumee came upon the cars of the plaintiff company, it is conceded that defendants are bound to carry them. Now then, in this case these cars are the property of plaintiff. There is no evidence in the case showing under what terms and conditions they are allowed to run over the Bowling Green road; and while they run over the plaintiff’s road they are operated by and are under its exclusive control, and while they run upon its tracks they carry passengers to and from Toledo and from and to points along its line; and if these cars remain on plaintiff’^ line until they reach Toledo,it is said by the defendant they have a right to come into the city over defendant’s tracks; but if at some *198 point along the line of plaintiff’s road they are allowed by the plaintiff to run off on a side track to some other place, and pick up other traffic and passengers there and bring them onto plaintiff’s road, they are not allowed to enter the city under the provisions of this contract. We do not think the contract should receive such a narrow construction as that would be, irrespective of any question of public policy or the rights of the public to travel upon tftese roads.
We deal only with the case that we have before us, and do not undertake to discuss anything that might arise hereafter. It might be conceded that if an unreasonable amount of traffic is furnished to the defendant’s road, or an unreasonable number of cars without traffic are furnished, that the defendant would have a right to relief in some form or other; but as long as its objection is not that it is receiving traffic, but that the traffic does not originate upon the line of plaintiff’s road, but comes from some other track and by some other means reaches the plaintiff’s road, we do not believe that their objection to running these cars is well founded. We do not believe it is a substantial objection,in other words,resting upon good and solid grounds, that would authorize us to say, as we would have to say if we dismissed this bill, that the defendants have a right to put obstructions in their track, and stop the running of these cars, carrying this kind of traffic. It is stated they have to furnish power, It is true they have contracted to do that; but the ultimate object and purpose of this contract was, to get business. It is idle to seek to evade it. It was supposed when the parties entered into it, that it would be mutually beneficial to both of them. That was the idea, in making it, that to secure the proceeds from the carrying of passengers would be mutually beneficial to both roads; and to say now that because those.passengers come from a few miles south of Perrysburg they should not be allowed to come into the city under thiis contract, would *199 put a very strained construction on it, the only ground for resting it upon, being the fact that they rode continuously from their starting point to the city of Toledo on the cars of the plaintiff, To say that this will open up the roads of the defendant to the traffic of the country around here with every railroad whose traffic may be run into the city of Toledo upon it, is begging the question. We haven’t reached that point. This conclusion does not give the right to another company or individual to run its traffic or its passengers or its cars over the tracks of the defendant company. But we think all the facts in this case concur in making these cars and this traffic, the cars and traffic of the plaintiff road, that come fairly and squarely within the provisions of this contract, which the defendants are bound to receive under this contract in the manner in-which it has been tendered to them. Therefore the injunction prayed for will be made perpetual.
Smith & Salter, for defendants.
King & Tracy, for plaintiff.